

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*James O'Donohue*
*Assistant United States Attorney*
*James.O'Donohue@usdoj.gov*

*36 S. Charles Street*
*Suite 400*
*Baltimore, MD 21201-3119*

DIRECT: 410-209-4985
MAIN: 410-209-4800

July 5, 2024

The Honorable J. Mark Coulson
United States Magistrate Judge
101 W. Lombard Street
Baltimore, Maryland 21201

  Re:  <u>United States v. Cedrick Brinkley</u>
     <u>Criminal No. MJM-24-214//24-mj-01585-JMC</u>

Dear Judge Coulson:

  The Defendant, Cedrick Brinkley, is scheduled to appear before the Court on Monday, July 8, 2024, at 3:00 p.m. for a detention hearing. Defendant Brinkley and Co-Defendant Steven Lee were initially charged with one count of 18 U.S.C. 933(a)(3) (Firearms Trafficking Conspiracy) via criminal complaint, which was unsealed during their initial appearance on July 3, 2024. Later that same day, a grand jury returned an eight-count indictment, the charges in which pertaining to Defendant Cedrick Brinkley were one count of 18 U.S.C. 933(a)(3), three counts of 18 U.S.C. 933(a)(1), two counts of 18 U.S.C. 922(g)(1), and one count of 18 U.S.C. 922(o).

  For the reasons outlined below, there is no condition or combination of conditions, short of detention, to reasonably ensure the safety of the community and ensure the Defendant's appearance in Court.

### I.  Factual Background

  This case involves a firearms trafficking conspiracy in which Defendant Brinkley agreed with Defendant Lee to sell firearms to a "customer" in Maryland, who they believed was going to re-sell the firearms to a purchaser in New Jersey, who would then further sell the firearms. The "customer" was in fact an undercover ATF Special Agent ("the UC"). On multiple occasions, the UC met with Brinkley and purchased multiple firearms, and investigators observed Brinkley meeting with Lee before and after the transactions. During one of the transactions, Brinkley even called Lee (a.k.a "Speedy") so that Lee could explain to the UC why each firearm was priced the way it was, clearly evincing Lee's knowledge and agreement to perpetrate the firearms trafficking.

  On April 3, 2024, Brinkley agreed to meet with the UC and a second individual, who was actually a confidential information ("the CI"), to sell firearms. The CI is registered with the government and is paid for their services. On that date, Brinkley met with the CI and the UC at a pre-determined location, removed four firearms from a black satchel, and placed the firearms on a table. The UC explained his "business" to Brinkley (i.e., shipping firearms) and how he could only

buy firearms on days in which a truck was available to take them up north. Brinkley explained to the UC that he was a felon and could get 15 years if caught with firearms. The UC paid Brinkley $4,500 for the four firearms.

On April 17, 2024, Brinkley arranged for another firearms sale to the UC. He again met the CI and the UC at a pre-determined meeting location. During this transaction, the CI observed a second person – Lee – in the passenger seat of Brinkley's vehicle when he arrived at the transaction location. Brinkley removed five firearms from a backpack, placed them on a table, and received $6,100 from the UC in exchange for the five firearms. The UC explained that he would take photos of the firearms to send them to the re-seller in New Jersey, so he could secure buyers before the firearms even arrived in New Jersey. The UC also showed Brinkley photos of vehicles with "trap" compartments for hiding firearms during transport. After the transaction, surveillance observed Brinkley drive to a public parking lot, at which time Lee was observed exiting the vehicle and entering a Honda Accord with an Arkansas dealer plate.

On April 24, 2024, Brinkley agreed to another firearms sale but advised the price would be higher this time because, among other reasons, one of the firearms had a "button" on it. Investigators know that a "button" is slang for a Glock switch machine gun conversion device, which converts a semi-automatic firearm to a fully automatic firearm. Prior to this transaction, surveillance observed Brinkley meet Lee at a public parking lot. Brinkley exited his vehicle empty handed, retrieved a black bag from Lee's vehicle, re-entered his vehicle, and drove to the agreed upon meeting location. He brought what appeared to the same bag to the meeting and removed the firearms from that bag. When the UC asked Brinkley about pricing, Brinkley placed a Facetime call to his supplier – "Speedy" (i.e., the nickname for Lee). During the call, Lee described each firearm in detail, including the "FN" firearm (which retails for a high price) and the Glock with the "button" on it, despite not being physically present for the transaction. Lee advised the UC that he would not charge as much in future purchases. The UC reiterated that these transactions were "all about the money" because this was a business. The UC paid $7800 for the firearms. After the transaction, Brinkley drove back to the public parking lot and met again with Lee.

Between the three transactions, Brinkley and Lee sold the UC 14 firearms, three of which were reported stolen and one of which was a converted machine gun, and 50 rounds of ammunition. All of the transactions were audio and video recorded. The firearms were all test-fired and deemed operable, and all were reviewed by a nexus expert and were deemed to have affected interstate commerce.

On May 3, 2024, Brinkley went to a gun shop in Essex, Maryland and purchased 50 rounds of Fiocchi semi-jacketed hollow point .32 caliber ammunition. Investigators obtained surveillance footage depicting Brinkley in the store and a receipt confirming his transaction.

On July 2, 2024, search warrants were executed at 837 Hollins Street, Apartment 1C, Baltimore, MD (Lee's residence) and 8608 Sweet Autumn Drive, Windsor Mill, MD (Brinkley's residence). On Lee's bedside table, investigators recovered a Taurus PT709 pistol loaded with 6 rounds of ammunition. Investigators also recovered 19 rounds of ammunition in a Glock box, a .45 caliber magazine in a Glock box, 1 round of ammunition in a Glock box, and 15 rounds of assorted ammunition from Lee's vehicle. From Brinkley's residence, investigators recovered two pistols and nearly $20,000 in $100 bills from inside a safe.

Both Defendants have been convicted of a crime punishable by more than one year in prison and are therefore prohibited from possessing firearms and ammunition. The Defendants did agree to transfer firearms to another person (the UC) knowing or having reasonable cause to believe that the use, carrying, or possession of such firearms would constitute a felony, here 18

U.S.C. 922(a)(1)(A) (Engaging in the Business of Dealing Firearms Without a License) and 18 U.S.C. 922(o) (Unlawful Possession of a Machine Gun).

## II.      Legal Standard and Analysis of 18 U.S.C. § 3142 Factors

The Government's burden when seeking detention based on community safety is clear and convincing evidence, and a preponderance of the evidence to determine whether the defendant is a flight risk. *United States v. Anderson*, No. ELH-19-302, 2020 WL 1929440, at *2 (D. Md. Apr. 20, 2020).  When seeking a detention order, the Government may proceed by proffer of evidence. *See United States v. White*, 2015 WL 2374229, at *2 (D. Md. May 15, 2015).  The factors a court must consider in determining whether a defendant shall be detained pending trial are outlined by 18 U.S.C. § 3142(g). The factors are as follows:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . a controlled substance [or] firearm;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person . . . ; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

In the instant case, the § 3142 factors establish that the Defendant should be detained pending trial.

### a.   Nature and Circumstances of the Offense

Here, the Defendants agree to traffic more than a dozen firearms to an individual who they knew was turning those firearms around and re-selling them to individuals in New Jersey. The Defendants also knew they were selling the UC a machine gun, which by their own admission, was more valuable and desirable than other firearms. For these actions, the Defendants were indicted on charges of 18 U.S.C. 933(a)(1) and 18 U.S.C. 933(a)(3). These criminal statutes were codified in June 2022 as part of the Bipartisan Safer Communities Act (BSCA) "in the wake of the tragic mass shootings – including at Robb Elementary School in Uvalde, Texas, Topps Grocery Store in Buffalo, New York, and a house of worship in Laguna Woods, California." Press Release, Department of Justice, Justice Department Secures More Than 500 Prosecutions Under New Firearms Statutes Enacted by Bipartisan Safer Communities Act (June 11, 2024), https://www.justice.gov/opa/pr/justice-department-secures-more-500-prosecutions-under-new-firearms-statutes-enacted. With the passage of the BSCA, Congress recognized the enhanced danger of trafficking firearms because the firearms get into the hands of individuals who otherwise could not lawfully obtain them, leading to increased danger and violence. Here, the Defendants not only engaged in calculated, planned trafficking, but also possessed additional firearms and ammunition when prohibited from doing so. The nature and circumstances of these offenses clearly paint a picture favoring detention.

### b.   Weight of the Evidence

As detailed in the factual summary above, the weight of the evidence against both Defendants is incredibly strong. The firearm transactions were audio and video recorded, and because the trafficked firearms were purchased by the UC, they are in the possession of the Government. Additionally, search warrants obtained additional incriminating evidence of the Defendants' possession of firearms and ammunition.

### c.  History and Characteristics of the Defendant

Defendant Brinkley's history and characteristics also favor detention. Brinkley was convicted of Robbery in 2013 and sentenced to seven years prison, all suspended, plus two years of supervised probation. He had additional theft and burglary related convictions in Virginia and Maryland in 2017 and 2019. The Government agrees with the pretrial services report (PSR) that Brinkley's criminal history and characteristics favor detention.

### d.  Danger to the Community

This Section 3142 factor counsels strongly in favor of detention pending trial. As discussed at length above, the very nature of firearms trafficking is inherently dangerous. Lee engaged in selling firearms with the knowledge that they would be further sold to individuals in New Jersey. These actions, coupled with Brinkley's prior convictions for Robbery and other theft related offenses, clearly evince the danger he poses to the community if released. Especially troubling here is the fact that Brinkley and his co-conspirator sold the UC a Glock switch, the dangers of which have been well documented as they "render semi-automatic handguns capable of unleashing bullets at a rate of more than 1,000 per minute." Lee O. Sanderlin, *Baltimore Has a Machine Gun Problem*, The Baltimore Banner (March 18, 2024). As Brinkley was meeting with the UC for the April 24, 2024 transaction, Lee was on the phone describing the "FN" firearm, the "button" (i.e., Glock switch), and other firearms, clearly demonstrating his knowledge of their effectiveness and potential for danger. Based on his actions in this case, and his criminal history, Brinkley has demonstrated that if released, he presents a very real danger for the community.

## III.   Conclusion

For the reasons stated above, there is no condition or combination of conditions that would reasonably assure the safety of the community and Brinkley's appearance in Court. The Government respectfully requests that Defendant Brinkley be detained pending trial.

Respectfully Submitted,

Erek L. Barron
United States Attorney

*James O'Donohue*

James O'Donohue
Assistant United States Attorney

Cc via e-mail Tony Garcia